UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| FLORIDA FOUNDATION SEED PRODUCERS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | )  CASE NO.: 1:10-CV-125 (WLS) ) |
| GEORGIA FARM SERVICES, LLC, WILLIAM DOUGLAS WINGATE, and GREAT SOUTHERN PEANUT, LLC, | ) ) ) ) |
| Defendants. | ) ) |
| GEORGIA FARM SERVICES, LLC | ) ) ) |
| Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| GEORGIA CROP IMPROVEMENT ASSOCIATION, INCORPORATED, | ) ) ) |
| Third-Party Defendant. | ) ) ) |

**MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
OF LAW IN SUPPORT THEREOF**

NOW COME Georgia Farm Services, LLC ("GFS"), William Douglas Wingate ("Wingate"), and Great Southern Peanut, LLC ("GSP") (collectively "Defendants") and hereby respectfully request the Court enter judgment in favor of Defendants, as a matter of law.

**INTRODUCTION**

At all relevant time periods, GFS and Plaintiff were parties to a license agreement pursuant to which GFS could propagate, condition, market, and sell Florida-07 variety

peanut seed. Mr. Wingate is the managing member of GFS. GSP shells peanuts exclusively for GFS. As such, Defendants were fully authorized by Plaintiff to engage in all of the conduct about which Plaintiff now complains. Plaintiff's complaint must be dismissed in its entirety.

I.   THE PARTIES

Georgia Farm Services, LLC ("GFS") is a farm supply company and peanut buying point for Great Southern Peanut, LLC ("GSP"). (See Wingate Decl. at para. 4 attached hereto as Exhibit A). GFS was at all relevant time periods party to a license with Plaintiff allowing GFS to propagate, condition, market, and sell Florida-07 peanut seed. (See License Agreement filed under seal pursuant to July 18, 2011 order [Doc. 71] granting Plaintiff's motion to file license agreement under seal; Wingate Decl. at para. 9).

GSP is a peanut sheller. (Wingate Decl. at para. 5). GSP shells peanuts purchased through the GFS buying point. (Wingate Decl. at para. 6). GSP is designated an "approved conditioning facility" by Georgia Crop Improvement Association (GCIA), meaning GSP can shell and condition peanut seed certified by GCIA. (Wingate Decl. at para. 7).

Mr. Wingate is the managing member of GFS and GSP. (Wingate Decl. at para. 23). Mr. Wingate is the holder of a seed dealer's license issued by the Department of Agriculture of the State of Georgia. (Wingate Decl. at para. 8).

The Georgia Crop Improvement Association is designated by the dean of the College of Agricultural Environmental Science of the University of Georgia to provide seed certification and labeling. O.C.G.A. § 2-11-52. There are essentially three classes of certified seed: "foundation seed" produced from breeder seed, "registered seed"

produced from foundation seed, and "certified seed" produced from registered seed. O.C.G.A. § 2-11-51.

Florida Foundation Seed Producers ("FFSP") it is a direct support organization of the University of Florida. (First Amended Complaint at para. 1). FFSP claims to be the owner of a plant variety protection act certificate for the Florida-07 peanut variety. FFSP licenses the variety to eighteen peanut companies. (See June 13, 2011 FFSP responses to GFS's request for production, at No. 12, attached hereto as Exhibit B). GFS was one such licensee. (See license, filed under seal on October 31, 2011). The licensees sell peanut seed directly or through distributors to farmers. (Wingate Decl. at para. 10). The farmers, in turn, return the harvest to the licensee for sale as seed for next year's crop or for sale in the edible market. (Wingate Decl. at para. 10).

## II. THE ALLEGATIONS

Plaintiff alleges Defendants violated the plant variety protection act by conditioning and selling four lots (90,000 lbs) of Florida-07 peanut seed in April 2010 to two farmers in Dooly County, Georgia. (First Amended Complaint at para. 19). Plaintiff's allegation ignores that in April 2010 GFS held a license from Plaintiff allowing it to condition and sell Florida-07 peanut seed. This license agreement authorizes all of the conduct about which Plaintiff now complains. As a result, Plaintiff's PVPA claim must be dismissed.

Plaintiff further contends GFS breached its Florida-07 license agreement because the four lots of peanut seed sold to the two Dooly County farmers was "uncertified." (First Amended Complaint at para. 33). These allegations ignore GCIA's admission that the four lots of peanut seed indeed met all standards for certification. (See Deposition of

GCIA's director Terry Hollifield at 84:17 – 85:12, attached hereto as Exhibit C). The only technicality was that GCIA improperly failed to deliver the certification tags to GFS by the day when it promised to deliver them. (Wingate Decl. at para. 17). (This failure forms the basis of Defendants' third party claims against GCIA.) This does not mean that the seed was something other than "certified" seed. As a result, there can be no breach of contract.

Plaintiff's add-on claims of conversation and unjust enrichment fail for the same reasons Plaintiff's PVPA and breach of contract claims fail.

## **ARGUMENT AND CITATION OF AUTHORITY**

I.     THE LAW OF SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that courts should grant summary judgment when "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." "The general rule of summary judgment in the Eleventh Circuit states that the moving party must show the court that no genuine issue of material fact should be decided at trial." Robinson v. AFA Serv. Corp., 870 F. Supp. 1077, 1079-1080 (N.D. Ga. 1994), citing Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991). "While all evidence and factual inferences are to be viewed in a light most favorable to the nonmoving party, Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir. 1987); Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987), the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Robinson v. AFA Serv. Corp., 870 F. Supp. 1077, 1079-1080 (N.D. Ga. 1994); see also Anderson v. Liberty Lobby, 477 U.S.

242, 248 (1986). "An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is 'merely colorable' or is 'not significantly probative.'" Robinson v. AFA Serv. Corp., 870 F. Supp. 1077, 1079-1080 (N.D. Ga. 1994), citing Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986). "Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case." Id.

"Where neither party can prove either the affirmative or the negative of an essential element of a claim, the movant meets its burden on summary judgment by showing that the opposing party will not be able to meet its burden of proof at trial." Id., citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "In Celotex, the Supreme Court interpreted Rule 56(c) to require the moving party to demonstrate that the nonmoving party lacks evidence to support an essential element of its claim." Id. "Thus, the movant's burden is 'discharged by showing -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Id., citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "The nonmoving party must go beyond the pleadings and submit evidence in the form of affidavits, depositions, admissions and the like, to demonstrate that a genuine issue of material fact does exist." Id., citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

II.   PLAINTIFF'S PVPA CLAIM FAILS AS A MATTER OF LAW

FFSP alleges it is the owner of Plant Variety Protection Act Certificate No. 200800069 covering a peanut variety referred to as the Florida-07 variety. (Amended Complaint at para. 12). Plaintiff alleges in count one of its amended complaint that GFS, GSP and Mr. Wingate infringed this PVPA certificate by selling four lots of "uncertified

Florida-07 peanut seed to peanut growers for planting." (Amended Complaint at para. 19, 25). Plaintiff further alleges in Count One of its amended complaint that GSP "conditioned Florida-07 peanuts for the purpose of propagation, and stocked Florida-07 peanuts in order to sell, offer to sell, deliver, ship or otherwise transfer those peanuts for further propagation and planting in violation of 7 U.S.C. §2541." (Amended Complaint at para. 26).

7 U.S.C. § 2541 prohibits, in relevant part, a party from selling, marketing or conditioning a protected variety of peanut seed for planting purposes without the authority of the owner of the variety.

The shipping of the four lots of peanut seed (90,000 lbs) at issue to two farmers in Dooly County does not constitute a violation of the PVPA. The peanut seed at issue was shipped on April 17, 2010. (Wingate Decl. at para. 16). On that date, GFS and Plaintiff were parties to a valid license agreement that expressly allowed GFS to "propagate, market and sell" FL-07 peanut seed. (See License Agreement at para. 2(a), filed under seal on October 31, 2011 pursuant to Court Order [Doc. 71]). Because these shipments were made with the authority of FFSP, there can be no infringement.

Likewise, the "conditioning" of the four lots of peanut seed by GSP does not constitute infringement. Under good farming practices, peanut seed must be conditioned prior to planting. (Wingate Decl. at para. 11). The only FL-07 peanut seed conditioned by GSP was seed obtained from GFS, which had a license to condition and sell FL-07 peanut seed. (Wingate Decl. at para. 12). Therefore, the conditioning of the FL-07 peanut seed at issue cannot constitute infringement.

6

Plaintiff's allegation that a PVPA violation has occurred because the four lots of peanut seed at issue were somehow sold "uncertified" is flawed. The seed at issue was "registered" seed. (Wingate Decl. at para. 13). "Registered" seed is a class of certified seed. (Wingate Decl. at para. 14; O.C.G.A. § 2-11-51). The Georgia Crop Improvement Association in the agency in Georgia responsible for determining whether seed qualifies as a class of certified seed. O.C.G.A. § 2-11-52. GCIA's director, Terry Hollifield, testified under oath that the four lots at issue qualified as a class of certified seed. (Hollifield Depo. 84:17 – 85:12). Although GCIA improperly failed to deliver certification tags when it promised it would, there is no question that the four lots at issue qualified as a class of certified seed (i.e., "registered" seed).

Because Defendants at all times acted with authority of Plaintiff and because the seed met all criteria of a class of certified seed, there can be no infringement of Plaintiff's PVPA certificate.

## III. PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW

Plaintiff alleges in Count Two of its complaint that GFS breached the license agreement by selling "uncertified Florida-07 peanut seed to growers for planting without authorization." (Amended Complaint at para. 33). GFS is entitled to judgment as a matter of law on Plaintiff's breach of contract claim. As set forth above, GFS did not sell "uncertified" Florida-07 peanut seed. The four lots of peanut seed sold to the two Dooly county farmers unquestionably met the requirements for certification. The fact that GCIA did not send the certification tags like it promised it would does not mean the seed was not "certified" seed. To the contrary, GCIA executive director Terry Hollifield has

admitted that the seed met the requirements for certification. (Hollifield Depo. at 84:17 – 85:12).

GFS readily admits the four lots of seed were shipped without the certification tags attached to the bags. The sole reason the seed was shipped without the tags was because GCIA failed to deliver the tags when it promised. (Wingate Decl. at para. 17). Ironically, Plaintiff learned directly from GFS that the four lots had been shipped without the tags affixed to the bags. Mr. Wingate contacted Plaintiff for help obtaining the tags from GCIA. (Wingate Decl. at para. 18). Instead of helping Mr. Wingate obtain the tags (for which the peanut seed unquestionably qualified), FFSP (1) instructed GCIA not to issue the tags and (2) sued GFS for a windfall. Had FFSP simply asked GCIA to send the tags, this lawsuit would not exist. FFSP manufactured this lawsuit by failing to assist GFS obtain certification tags for peanut seed that qualified for the tags. FFSP now seeks a $28 million windfall from a situation FFSP created. FFSP's failure to assist GFS obtain the certification tags bars FFSP from suing GFS for the seed not being tagged. "The equitable doctrine of unclean hands provides that one who has acted in bad faith, resorted to trickery and deception, or been guilty of fraud, injustice or unfairness will appeal in vain to a court of conscience." Kingsley v. Wetzel, 518 F.3d 874, 878 (11th Cir. 2008).

Even if shipping the four lots of peanut seed prior to receipt of the tags constitutes a technical violation of the license, it has not damaged FFSP in any way. In Georgia, the elements of a breach of contract are: "(1) breach and (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Jenkins v. BAC Hone Loc-Servicing, LP, 2011 U.S. Dist. LEXIS 111235 at 20 (M.D. Ga. 2011). "The breach must be more than de minimus and substantial compliance with the terms of the

contract is all that the law requires." Id.  Under the license agreement, FFSP receives a $.03 royalty for each pound of Florida-07 peanut seed sold by the licensee.  (Wingate Decl. at para. 19).  Therefore, under the license agreement FFSP is due $2700 for the 90,000 pounds of peanut seed making up the four lots in question (90,000 lbs x $.03 = $2700).  GFS has tendered payment for the full amount of all royalties owed under the license agreement.  (Wingate Decl. at para. 19).  As a result, FFSP has suffered no damage from the alleged breach of the license, and its breach of contract claim should be dismissed.

IV.     PLAINTIFF'S CONVERSION CLAIM FAILS AS A MATTER OF LAW

Plaintiff's conversion claim is premised on the idea that Defendants sold Florida-07 peanut seed without authority.  (Amended Complaint at para. 37).  As set forth above, the selling of the four lots of peanut seed at issue was pursuant to authority granted in the license agreement between FFSP and GFS.  As such, there can be no "conversion."

V.      PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW

Plaintiff's unjust enrichment claim is premised on the idea that Defendants have somehow enjoyed an improper benefit by selling allegedly "uncertified Florida-07 variety peanut seed in contravention of FFSP's Plant Variety Protection Act rights."  Amended Complaint at para. 42.

As a threshold matter, Plaintiff cannot sue for breach of the license agreement and unjust enrichment.  Unjust enrichment is an equitable claim that only applies in the absence of an enforceable contract.  Jackson v. JHD Dental, LLC, 2011 U.S. Dist LEXIS 63015 at *25-26, citing St. Paul Mercury Ins. Co. v. Meeks, 270 Ga. 136, 137 (1998).

Thus, when pleading unjust enrichment, a plaintiff may not allege or incorporate by reference an allegation that the parties had an enforceable agreement. Id., citing Ga. Tile Distrib., Inc. v. Zumpano Enter., Inc., 205 Ga. App., 487, 490 (1992) (the theory of unjust enrichment applies only "[i]n the absence of a contractual agreement"); See also Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C., 426 F. Supp. 2d 1356, 1371 (N.D. Ga. 2006) (prohibiting an equitable claim of promissory estoppel where the existence of a contract was undisputed).

Count four of Plaintiff's amended complaint adopts and incorporates allegations that specifically assert the existence of a valid contract. (First Amended Complaint at para. 41). Plaintiff does not offer its unjust enrichment claim as though it were in the alternative. Rather, it asserts in count four both the existence of a valid contract and a claim for unjust enrichment. Under the circumstances, Plaintiff's unjust enrichment claim must be dismissed as a matter of law.

In any event, as set forth above, the four lots of peanut seed sold met all requirements for certified seed. Defendants have not been unjustly enriched because Defendants have acted with the authority of Plaintiff. GFS tendered to Plaintiff the $2700 in royalties arising from the sale of the four lots. Therefore, Plaintiff's "unjust enrichment" claim must fail.

## CONCLUSION

For the foregoing reasons, this Court should grant judgment in favor of Defendants and dismiss all of Plaintiff's claims in their entirety.

Respectfully submitted this the 31st day of October 2011.

                                        FLYNN PEELER & PHILLIPS, LLC

                                        **/s/Charles E. Peeler**
                                        CHARLES E. PEELER
                                        Georgia State Bar No. 570399
                                        Post Office Box 7 (31702)
                                        517 West Broad Avenue
                                        Albany, GA 31701
                                        Telephone: 229-446-4886
                                        Fax: 229-446-4884
                                        Email: cpeeler@fpplaw.com

                                        *Attorney for Defendants*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| **FLORIDA FOUNDATION SEED PRODUCERS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CASE NO.: 1:10-CV-125 (WLS)** |
| ) | |
| **GEORGIA FARM SERVICES, LLC, WILLIAM DOUGLAS WINGATE, and GREAT SOUTHERN PEANUT, LLC,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| **GEORGIA FARM SERVICES, LLC** ) | |
| ) | |
| **Third-Party Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| **GEORGIA CROP IMPROVEMENT ASSOCIATION, INCORPORATED,** ) | |
| ) | |
| **Third-Party Defendant.** ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2011, I caused a true and correct copy of the foregoing MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW to be electronically filed through the Court's CM/ECF system which shall cause service to be electronically made upon the following:

    Mr. William P. Langdale, III
    Ms. Christina L. Folsom
    Langdale Vallotton, LLP
    1007 North Patterson Street
    Post Office Box 1547
    Valdosta, Georgia 31603

Mr. Joel E. Cape
Everett, Wales & Comstock
1944 E. Joyce Blvd.
PO Box 8370
Fayetteville, Arkansas 72703

Mr. Richard W. Fields
Perry & Walters, LLP
PO Box 71209
Albany, Georgia 31708-1209

Mr. Duff Nolan
Nolan Law Group, PLLC
411 South Main
Post Office Box 68
Stuttgart, Arkansas 72160

This the 31st day of October 2011.

        FLYNN PEELER & PHILLIPS, LLC

        **/s/Charles E. Peeler**
        CHARLES E. PEELER
        Georgia State Bar No. 570399
        Post Office Box 7 (31702)
        517 West Broad Avenue
        Albany, GA 31701
        Telephone: 229-446-4886
        Fax: 229-446-4884
        Email: cpeeler@fpplaw.com